Kevin J. Cole (SBN 321555)
**KJC LAW GROUP, A.P.C.**
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797
e-Mail: kevin@kjclawgroup.com

Attorneys for Defendant
*Michael Wei Yueh Liu*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL WEI YUEH LIU,<br><br>Defendant. | CASE NO. 5:19-cr-00027-RSK<br><br>**DEFENDANT USA MICHAEL WEI YUEH LIU'S POSITION REGARDING SENTENCING**<br><br>Date: December 9, 2024<br>Time: 10:00 a.m. |

## I. Introduction.

Defendant Michael Wei Yueh Liu ("Mr. Liu") faces sentencing following a guilty verdict at trial for one count of conspiracy under 18 U.S.C. § 371 and ten counts of international promotional money laundering under 18 U.S.C. § 1956(a)(2)(A). Mr. Liu is 59 years old and a father of three (ages 21, 18, and 13) with no prior criminal history. Mr. Liu has been on pretrial release since January 31, 2019, and has "complied with all Court ordered conditions of release." PSR, ¶ 7.

The original PSR calculated Mr. Liu's sentencing guidelines range as 33 to 41 months based upon an offense level of 20.[1] However, Mr. Liu respectfully requests that the Court depart from the Sentencing Guidelines and impose a term of imprisonment of no more than 26 months, with the consideration that Mr. Liu receive home detention for part, if not all, of his sentence. Mr. Liu urges the Court to consider the relevant factors discussed in this Sentencing Position and recognize that a term of no more than 26 months' home detention would be sufficient, but not greater than necessary to accomplish the goals of sentencing.

## II. The original Presentencing Report's calculations and recommendations.

The original PSR calculated Mr. Liu's sentencing guidelines range as 33 to 41 months. *See* PSR, ¶ 102. This range was calculated upon a base offense level of 20 under U.S.S.G. § 2S1.1(a), which provides the base level calculation as 8 plus the number of offense levels from the table in U.S.S.G. § 2B1.1 corresponding to the value of laundered funds. *Id*. at ¶ 33. Since Mr. Liu was found guilty of laundering funds totaling $435,286.98, the PSR applied a 12-level increase over the base level of 8 in accordance with U.S.S.G. § 2B1.1(b)(1)(G), thus giving a total base offense level of 20. *Id*. at ¶ 36.

A two-level upward adjustment was applied in accordance with U.S.S.G. § 2S1.1(b)(2)(B), bringing the adjusted offense level to 22. *Id*. at ¶ 37. A two-level zero-

---

[1] Although, as discussed below, an addendum to the PSR was submitted which raised the offense level to 24 with a guideline range of 51 to 63 months.

1
DEFENDANT MICHAEL LIU'S POSITION REGARDING SENTENCING

point offender reduction was applied under U.S.S.G. § 4C1.1, bringing the total offense level to 20. *Id*. at ¶¶ 47–49.

### III. The Government's Sentencing Position.

The Government submits the total offense level should be 24. ECF No. 225 at 4. The Government disagrees with the PSR's calculation made under U.S.S.G. § 2S1.1**(a)(2)**, and instead, contends the offense level calculation should be made under § 2S1.1**(a)(1)**. Notwithstanding such discrepancy, the Government argues that even if the offense level were to be calculated under §2S1.1(a)(2), the total offense level would still be 24 given the Government's proposed calculation of approximately $2,129.993.24 in laundered funds.

And based upon the Government's figures, an addendum to the PSR was submitted which raised the offense level to 24 with a guideline range of 51 to 63 months. ECF No. 227.

### IV. Mr. Liu's Sentencing Position.

The original PSR offense level is correct. That is, Mr. Liu's offense level should be calculated under section 2S1.1**(a)(2)** not section 2S1.1**(a)(1)** because Mr. Liu's offense level with respect to the underlying immigration fraud cannot be calculated. Essentially, section 2S1.1 provides that, in the event that defendant is not accountable for the underlying offense (as determined under subsection (a)(1)(A) of § 1B1.3), or in the event that the offense level for the underlying offense cannot be determined, then the base offense level is 8 plus the offense levels corresponding to the amount of funds laundered—which is how the offense was calculated in the PSR.

U.S.S.G. § 2L2.1 provides an immigration fraud base offense level of 11, with level increases corresponding to the amount of documents involved. *See* U.S.S.G. § 2L2.1(b)(2). However, in this case, the offense level for immigration fraud cannot be calculated because there is no evidence of the number of documents involved.

The Government only offers conclusory speculation that the number of fraudulently obtained visas "certainly" exceeded 100, and thus the base offense level should be increased by 9 levels. The Government's calculation is based upon the Declaration of IRS-

Criminal Investigation Agent Ryan Lee, who declared that one defendant "explained that USA Happy Baby Inc. has had over 100 pregnant Chinese women as clients." *See* ECF No. 225 at 14, ¶ b. But without more—i.e., tangible evidence as to the number of documents themselves—it cannot be determined with any sort of reliability that over 100 documents were involved in the offense. *See* U.S.S.G. § 6A1.3, *Commentary* ("Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. . . . Unreliable allegations shall not be considered." (internal citations omitted)).

Thus, because the total offense for the underlying offense cannot be determined with any sort of reliability, the offense level calculation should be made under section 2S1.1(a)(2). *See* U.S.S.G. § 2S1.1, comment. (n.3) ("Subsection (a)(2) applies to any case in which . . . (ii) the defendant committed the underlying offense (or would be accountable for the underlying offense under §1B1.3(a)(1)(A)), but the offense level for the underlying offense is impossible or impracticable to determine."). Thus, Mr. Liu agrees with the PSR's analysis that the total offense level is 20.

For similar reasons, the Court should reject the Government's analysis that Mr. Liu's total offense level would still be 24 even when analyzed under U.S.S.G. § 2S1.1(a)(2). The Government contends that the amount of laundered funds totaled approximately $2,129,993.24, and in so analyzing the table in § 2B1.1, the total offense level would be 24. But Mr. Liu was only charged and convicted for $435,286.98 in laundered funds. It would be unfair and prejudicial to Mr. Liu to sentence him based upon the spreadsheet attached to the Declaration of Ryan Lee without having the chance to fully address these evidentiary contentions put forth by the Government.

//

//

//

## V. A below guidelines sentence is appropriate.

Although the sentencing guidelines are the starting point for the Court's consideration of sentencing, the guidelines do not adequately address all of Mr. Liu's life circumstances, the circumstances of his offense, and the other punishment he has and will continue to suffer because of his offense.

The core principles of sentencing have been resolved by the Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007). "The guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009). Factors justifying a sentence outside the guideline range are no longer required to be "extraordinary." *Gall*, 552 U.S. at 47. "One theme" runs through the Supreme Court's recent sentencing decisions: "Booker empowered district courts, not appellate courts . . . [and] breathe[d] life into the authority of district court judges to engage in individualized sentencing . . ." *United States v. Whitehead*, 532 F.3d 991, 993 (2008). The primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to "'impose a sentence sufficient, but not greater than necessary,' to accomplish goals of sentencing." *Kimbrough*, 552 U.S. at 101.

Mr. Liu respectfully submits that when the factors set forth in 18 U.S.C. § 3553(a) are considered, a below-guidelines sentence is sufficient, but not greater than necessary, to achieve the aims of sentencing.

### A. Mr. Liu's history and characteristics warrant an additional downward departure.

Mr. Liu is undoubtedly a family man. He was born in Taiwan on August 10, 1965, where he graduated from the National Taiwan University in 1987, and then subsequently served in the Taiwanese military. PSR, ¶¶ 62, 66–67. Mr. Liu has three children (ages 21, 18, and 13) through his marriage with co-Defendant Jing Dong. And although he and Ms. Dong have been separated since 2018, he and Ms. Dong have maintained a positive co-parenting relationship. *Id.* at ¶¶ 68, 73.

Mr. Liu is also the in-home caretaker for his aging parents. *Id*. at ¶ 75. Mr. Liu's father is 95 years old, and his mother is 82 years old. *Id*. at ¶ 63. Mr. Liu takes his parents to their doctors' appointments, helps with administering their medications, gives them baths, and cooks their food. *Id*. at ¶ 75. Mr. Liu's children also live with Mr. Liu at his parents' house. *Id*. at ¶ 76.

### B. A downward departure would not result in unwarranted sentencing disparities.

In addition to being warranted based on the facts of Mr. Liu's case, an additional downward departure is unlikely to create unwarranted sentencing disparities. Indeed, sentencing data, published by the United States Sentencing Commission through the Judiciary Sentencing INformation (JSIN) platform, shows that a downward departure is typical. For defendants in Mr. Liu's same category—where the primary guideline is U.S.S.G. § 2S1.1, the criminal history category is I, and the base level offense is 20—only 19% of defendants are sentenced within range (which is 31-41 months). Instead, approximately 47% of defendants receive a downward departure, resulting in an average sentence of 28 months, with a median of 26 months. The JSIN data is shown below:



Note: The figure includes the 47 defendants reported to the Commission whose primary guideline was §2S1.1, with a Final Offense Level of 20 and a Criminal History Category of I, including defendants who received a §5K1.1 substantial assistance departure. Cases missing information necessary to complete the analysis were excluded from this figure. Defendants who received a §5K1.1 substantial assistance departure are included in this analysis but are excluded from other analyses below. As such, the number of defendants included in this analysis may exceed the number of defendants in other analyses. Total percentages displayed in the figure may not sum to 100% due to rounding.



Note: The figure includes the 29 defendants reported to the Commission (1) whose primary guideline was §2S1.1, with a Final Offense Level of 20 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure; and (2) the defendant received a sentence of imprisonment in whole or in part. Cases missing information necessary to complete the analysis were excluded from this figure.

Indeed, a lengthy prison term is unnecessary to deter Mr. Liu. Section 3553(a)(2) requires courts to consider the need for a sentence to prevent a defendant from engaging in future criminal conduct or endangering society. *See* 18 U.S.C. § 3553(a)(2)(B)–(C). In this vein, Congress has advised that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society . . . " See Pub. L. No. 98–473, § 239, 98 Stat. 1987, 2039 (1984) (note to 18 U.S.C. § 3551). Here, Mr. Liu poses no threat to society and a lengthy term of imprisonment is unnecessary to deter him.

Thus, in light of the sentencing data and Mr. Liu's characteristics, an additional downward departure is warranted. Indeed, the primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to "'impose a sentence sufficient, but not greater than necessary,' to accomplish goals of sentencing." *Kimbrough*, 552 U.S. at 101. A below-Guidelines sentence in this case is sufficient and not greater than necessary to provide just punishment for Mr. Liu.

### C. Home detention is an appropriate sentence in this case.

With that said, home detention in full, or in part, is an appropriate sentence in this case, and Mr. Liu respectfully requests that should the Court impose a term of imprisonment that Mr. Liu be permitted to serve it in the form of home detention. "Home

detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment." See U.S.S.G. § 5F1.2.

Home detention takes into account Mr. Liu's circumstances—namely, that Mr. Liu could still be the in-home caretaker for his two aging parents. Further, Mr. Liu has behaved well during his period of pretrial supervision. *See e.g.*, *United States v. Baker*, 502 F.3d 465, 468 (6th Cir. 2007) (in gun case where guidelines were 27-33 months, below-guideline sentence of probation with one year house arrest proper in part because defendant behaved "exceedingly well" while under supervision of pretrial services).

Indeed, this case has already cost Mr. Liu his standing in the community and caused humiliation, stress, and depression. PSR, ¶¶ 80–81. These are factors the Court should consider in fashioning an appropriate sentence. *See United States v. MacKay*, 20 F.Supp.3d 1287, 1297 (D. Utah 2014), *aff'd*, 610 F. App'x 797 (10th Cir. 2015) ("[R]ecognizing that the sentence imposed on MacKay must be just, the Court does not entirely disregard the considerable negative impacts this case has already had on him and his family. He has already lost standing in his community, faced the humiliation of a public trial, lost his job, spent a great deal of money on his defense, and otherwise experienced major financial set backs, and has no doubt suffered many emotional pains and negative health consequences that accompany such a process."); *United States v. Gaind*, 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (granting downward departure where defendant was punished by the loss of his business); *United States v. Vigil*, 476 F.Supp.2d 1231, 1235 (D.N.M. 2007) (finding variance appropriate where defendant was collaterally punished by loss of his position and reputation and widespread media coverage).

Additionally, Mr. Liu is a zero-point offender, permitting an additional departure—especially since this is a non-violent crime. See U.S.S.G. § 5C1.1, comment. (n.10) ("A departure, including a departure to a sentence other than a sentence of imprisonment, may be appropriate if the defendant received an adjustment under §4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range overstates

7

DEFENDANT MICHAEL LIU'S POSITION REGARDING SENTENCING

the gravity of the offense because the offense of conviction is not a crime of violence or an otherwise serious offense.").

## IV. CONCLUSION

In sum, Mr. Liu respectfully requests that the Court calculate the total offense level under U.S.S.G. § 2S1.1(a)(2) to be 20, as calculated in the original PSR. From there, Mr. Liu respectfully requests that the Court depart from the Sentencing Guidelines and impose a term of imprisonment of no more than 26 months, with the consideration that Mr. Liu receive home detention for part, if not all, of his sentence.

DATED:  December 3, 2024                    Respectfully submitted,

                                            **KJC LAW GROUP, A.P.C.**

                                            By: /s/ Kevin J. Cole

                                            Attorneys for Defendant
                                            *Michael Wei Yueh Liu*